D.J. POWERS COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
D. J. Powers Co. v. Commissioner
Docket No. 8082-77.
United States Tax Court
T.C. Memo 1981-622; 1981 Tax Ct. Memo LEXIS 117; 42 T.C.M. (CCH) 1524; T.C.M. (RIA) 81622; October 26, 1981. Nedom A. Haley and Joseph A. Odom, for the petitioner. Mark W. Nickerson, for *118 the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in petitioner's income taxes for the taxable years ending June 30, 1973, 1974 and 1975 in the respective amounts of $ 18,565.43, $ 24,132.21 and $ 1,704.71. The issues for decision are: (1) whether petitioner's plan, as originally adopted in 1972, satisfied the eligibility requirements of section 401(a)(3)[1] (prior to amendment by P.L. 93-406) for purposes of comprising a qualified plan; and (2) whether a 1975 amendment to the plan can be given retroactive effect. On April 18, 1980, respondent, with leave of the Court, amended his answer to raise another legal theory supporting the determination that petitioner's pension plan is unqualified; to wit, that the pension plan became unqualified due to a premature termination under section 1.401-1(b)(2), Income Tax Regs.
FINDINGS OF FACT At the time the petition in this case was filed, petitioner's business office *119 was in Savannah, Georgia. Petitioner is in the import-export business; it handles ocean freight and customs duties for both individuals and companies. Petitioner operates on the cash basis method of accounting. Between July, 1969 and July, 1971, the business subsequently conducted by petitioner was operated as a sole proprietorship by William E. Carter ("Carter"). On July 1, 1971, petitioner was incorporated in the State of Georgia. In 1972, petitioner was in a good financial situation and had excess funds available. Carter had several meetings with Mickey Greenfield ("Greenfield"), an agent of Confederation Life Insurance Co. ("Confederation"), during which the tax advantages of a pension plan were explored. On May 17, 1972, petitioner executed a joinder agreement whereby it adopted a prototype pension plan offered by Confederation. Under this joinder agreement (which incorporates by reference the terms and provisions of the prototype pension plan), petitioner established a noncontributory, defined benefit plan to be fully funded by insurance pension policies on the lives of the participants. The pension plan was to be effective as of May 17, 1972. The entry date was *120 specified as the first day of June. Petitioner was designated as the employer, and the D.J. Powers Company, Inc. Pension Trust ("Trust"), was designated as the Trust. Under the agreement, the requirements of eligibility to become a participant under the plan were as follows: a. Length of Employment: Shall have been continuously employed by the Employer for at least 3 year(s) (not to exceed 3 years). b. Age Requirements: (i) Shall have attained at least age 25 (cannot exceed 30) years nearest birthday. c. Job Classification (check as appropriate): [x] All job classifications. According to the prototype pension plan, the term "continuous employment" is defined as "an Employee's uninterrupted period of employment with the Employer." Section 1.12 of the plan further states: "Service performed as a proprietor or partner shall not be taken into consideration for any purpose under the Plan." Carter, a Trustee and President of petitioner, read the joinder agreement that he signed. He also had read the prototype pension plan and found it understandable. Section 2.03 of the prototype pension plan provided, in part: 2.03 FAILURE OF INITIAL QUALIFICATION. *121 Upon its execution of the Joinder Agreement the Employer shall cause the Trust to be submitted to the Internal Revenue Service for a determination of its status as a qualified employee pension plan and trust * * *. If the Internal Revenue Service shall determine that the Trust as adopted or amended does not qualify for the first Trust Year, the Employer shall promptly so notify the Trustee in writing. Upon direction of the Employer the Trustee shall terminate the Trust * * *. In the event that the Internal Revenue Service shall determine that the Trust does qualify for the first Trust Year, this Section shall be inoperative and of no effect * * *. Greenfield did not advise petitioner's officers to have the plan reviewed by petitioner's attorney or advisers. Greenfield informed Carter that no additional action was needed to qualify the plan the Carter relied on such advice. When the plan was established on May 17, 1972, the employees of petitioner were as follows: Employee
Position
William E. Carter
President
William Allen Jennings
Vice-President
William Conaway
Secretary
Ann L. Carter
Office Manager
Donna Parks McGraw
Clerk
The first four of *122 the above-named individuals were the officers and/or directors of petitioner. Carter held 100 percent of the stock of petitioner. On June 20, 1972, petitioner issued a check in the amount of $ 10,217.72 to Carter as Trustee of the Trust, to cover the 1972 premium. Carter endorsed the check over to Greenfield, the general agent of Confederation. On June 20, 1973, petitioner issued a check to Confederation in the amount of $ 35,784.69 to cover the 1973 premium.
Some time in early July, 1973, Carter discovered that Greenfield had never forwarded petitioner's joinder agreement to Confederation and had misappropriated the 1972 premium payment. Following a stormy meeting with Carter and Greenfield, Confederation executed the joinder agreement on July 10, 1973, and issued three insurance pension policies in the names of three of petitioner's employees. Some time in late 1973 or early 1974, Michael Bart, petitioner's accountant, traveled to Atlanta to confer with representatives of the Internal Revenue Service in order to ascertain whether a determination letter for the plan had been issued. At a meeting with the Service's representatives, Bart was informed that no determination letter *123 had been issued. On June 14, 1974, petitioner wrote Confederation authorizing the release of any information respecting petitioner's pension program to Personal Insurance Consultants, Inc. ("Consultants"), a firm that had been brought in to assist petitioner in this matter. By letter dated June 18, 1974, Consultants broached with Confederation the problem of what to do about the misappropriation by Confederation's agent. From July through September, 1974, the above parties argued over the effect to be accorded the misappropriation by Greenfield. By letter dated July 3, 1974, petitioner demanded, inter alia: (1) that credit be given for the 1972 premium payment; (2) that petitioner have the option of renegotiating the amount and method of coverage; and (3) that the plan be dated and have the accrued benefits applicable as of the date of the initial premium payment. Confederation finally agreed to accept the 1972 payment to Greenfield as a payment of premiums and to provide a number of options as to the size of the coverage based on various amounts of premium payments. After some consideration, petitioner decided to continue its present coverage under the plan. This was to *124 be accomplished by the issuance of three new policies effective June 20, 1972, in the original amounts of coverage in lieu of the policies issued in September, 1973. On August 14, 1974, Albert Green ("Green") of Consultants confirmed by letter petitioner's agreement with Confederation. Green also noted that Donna McGraw was to be included in the pension plan, effective June, 1974, at a coverage of $ 9,000. Green requested "any materials that will be needed by the C.P.A. for D.J. Powers Company, Inc. to obtain a favorable determination for tax deductions." In the middle of August, 1974, Confederation received two checks on behalf of the Trust, one in the amount of $ 29,050.26 and the other in the amount of $ 11,617.84. The first check related to the premium due in June, 1974, as computed on the employer's statement of premiums due. The second check in the amount of $ 11,617.84 reflected the settlement reached by the parties with respect to the misappropriation of the first premium. Both of these checks were dated June 28, 1974. On September 9, 1974, Confederation acknowledged, by letter, petitioner's decision as to the reissuance of the three old policies and the issuance *125 of a new policy to McGraw. However, Confederation indicated: Mr. Bennion has already discussed with you the fact that a Joinder Agreement backdated two years is unorthodox. I must confirm that Confederation Life does not hold itself or any of its employees to be expert in this area and therefore we cannot be certain that the action will be viewed favorably by the I.R.S.
On September 23, 1974, Confederation issued insurance pension policies on Carter, Jennings, Conaway and McGraw. Issuance of any policies was inconsistent with the eligibility requirements set forth in the original joinder agreement, since as of the issue date no individual could have met the three year length-of-employment requirement. On April 10, 1975, petitioner mailed an Application for Determination of qualification of the plan to the Director of Internal Revenue, Atlanta, Georgia. The application stated the eligibility requirements as "3 years of service; 25 years of age minimum; no job class." Although the application listed total employees of eight as of June 1, 1974, there were actually 11 employees. The application did not provide coverage data for earlier years. After the application was received *126 by respondent on April 25, 1975, the respondent's pension specialist noted the joinder agreement's three-year service requirement. Further, the specialist noted that petitioner was not incorporated until July 1, 1971, and therefore concluded that no employee could be covered by the plan until the taxable year ending June 30, 1975. On April 27, 1975, two days after the application was received by respondent, the pension specialist called Green and advised him of this fact. On June 24, 1975, petitioner issued two checks to Confederation in the amounts of $ 13,567.99 and $ 1,192.66 for the 1975 premiums. On July 29, 1975, Confederation issued three more insurance pension policies, these on the lives of Mildred Barnes, Ada Price and Dorothy Sumner. On August 18, 1975, Green forwarded a revised joinder agreement to respondent. The revised joinder agreement, executed August 7, 1975, and accepted by Confederation on August 12th of that year, was identical to the original joinder agreement with the following exceptions: a. The eligibility requirements were reduced from 3 years to 11 months and from 25 to 22 years of age; b. Block 6.04 was checked to the effect that a participant *127 would receive no additional benefits for service after the normal retirement date; and c. Carter was designated as the sole trustee of the plan. As of June 30, 1973 and 1974, petitioner had nine and 10 employees, respectively. If the new eligibility requirements were applied retroactively, the breakdown of petitioner's total employees and eligible empolyees for the taxable years ending June 30, 1973 and 1974, would be as follows: June 30, 1973
June 30, 1974
Total Employees
9
10
Excluded due to minimum
service
4
2
Balance
5
8
Ineligible due to minimum
age
1
1
Eligible Employees
4
6
As of June 30, 1973, the plan had three participants, namely, Carter, Jennings and Conaway. As of June 30, 1974, the plan had four participants, namely, the above individuals and McGraw. On October 21, 1975, the Service issued a favorable determination letter for the plan year beginning July 1, 1974, but not for the plan years beginning July 1, 1972 and 1973. The determination letter also contained a standard caveat that it would not be effective for plan years beginning after December 31, 1975. This caveat was inserted so that petitioner would be on notice *128 that the plan had to be amended to comply with the provisions of ERISA. On November 25, 1975, Confederation issued an insurance pension policy on Richard Earnest Carter, the son of William E. Carter. The relevant details of that policy, as well as the other policies mentioned herein, are as follows: Date of
Policy
Pension
Name
Policy #
Issuance
Date
Date
William Carter
5006715
9/23/74
6/20/72
6/20/82
William Jennings
5006716
9/23/74
6/20/72
6/20/2006
William Conaway
5006717
9/23/74
6/20/72
6/20/2011
Donna McGraw
5007442
9/23/74
6/20/74
6/20/2017
Mildred Barnes
5018144
7/29/75
6/20/75
6/20/2005
Ada Price
5018145
7/29/75
6/20/75
6/20/98
Dorothy Sumner
5018146
7/29/75
6/20/75
6/20/2017
Richard Carter
5020979
11/25/75
6/20/75
6/20/2013
Policies issued in 1973 (subsequently cancelled)
William Carter
2539425
7/11/73
3/20/73
3/20/83
William Jennings
2539426
7/ 9/73
6/20/73
6/20/2006
William Conaway
2539427
7/11/73
6/20/73
6/20/2011
Monthly
Guaranteed
Pension
Cash Option
Life Insurance
at Pension
at Pension
Name
Face Amount
Date
Date
Exhibit
William Carter
$ 150,000.00
$ 1,500.00
$ 235,800.00
28-AB
William Jennings
85,440.00
854.40
134,312.00
29-AC
William Conaway
29,399.00
293.99
46,215.00
30-AD
Donna McGraw
9,000.00
90.00
15,984.00
31-AE
Mildred Barnes
7,800.00
78.00
13,853.00
36-AJ
Ada Price
7,680.00
76.80
13,640.00
37-AK
Dorothy Sumner
7,596.00
75.96
13,490.00
38-AL
Richard Carter
27,900.00
279.00
43,859.00
39-AM
Policies issued in 1973 (subsequently cancelled)
William Carter
$ 150,000.00
$ 1,500.00
$ 235,800.00
14-N
William Jennings
85,440.00
854.40
134,312.00
16-P
William Conaway
29,399.00
293.99
46,215.00
15-O
*129 On June 18, 1976, petitioner decided to terminate the pension plan in favor of a profit-sharing plan. Petitioner's attorney informed the Pension Benefit Guaranty Corporation ("PBGC") that the termination was to be effective June 28, 1976. However, on a Form 4576, Application For Determination, Termination or Curtailment of Plan (dated October 21, 1976), the effective date of the termination or curtailment was listed as June 30, 1975. Petitioner filed a corporate tax return for the taxable year ended June 30, 1976, indicating only one employee benefit plan. Petitioner also filed a Form 5500-C (Annual Return of Employer Benefit Plan), indicating that the employee benefit plan was a profit-sharing plan. On July 23, 1976, Confederation forwarded checks to the Trust, representing the cash values of all the insurance pension policies issued under the plan. The details relevant to those policies are as follows: Cash Value as of
Policy
Policy Anniversary
Name of Insured
Number
1976
Dividends
William Carter
5006715
$ 79,650.00
$ 3,187.05
William Jennings
5006716
4,870.08
1,084.92
William Conaway
5006717
2,057.93
146.47
Donna McGraw
5007442
144.00
32.63
Ada Price
5018145
76.80
Mildred Barnes
5018144
June, 1976 premium not paid.
Dorothy Sumner
5018146
June, 1976 premium not paid.
Richard Carter
5020979
June, 1976 premium not paid.
*130 Total Amount
Surrender
Name of Insured
Refunded
Date
William Carter
$ 82,864.05
7/23/76
William Jennings
5,955.00
7/23/76
William Conaway
2,204.40
7/23/76
Donna McGraw
176.63
7/23/76
Ada Price
76.80
7/23/76
Mildred Barnes
Policy lapsed without value on 7/21/76.
Dorothy Sumner
Policy lapsed without value on 7/21/76.
Richard Carter
Policy lapsed without value on 6/21/76.
The Trust "rolled over" the money received from Confederation into the new profit-sharing plan. The funds attributable to the policy of each participant still employed with the corporation were allocated to that employee's account in the new profit-sharing plan. Thus, Carter received $ 82,864.05, Conaway received $ 2,204.40, McGraw received $ 176.63, and Price received $ 76.80. However, Jennings, who had left the corporation on December 20, 1974, did not receive the $ 5,955 cash value of his policy. The PBGC has never issued a favorable determination concerning the termination of the pension plan. On its corporate returns for the taxable years ended June 30, 1973 and June 30, 1974, petitioner claimed deductions for contributions to the pension plan in the *131 amounts of $ 35,784.69 and $ 40,668.10, respectively. In the statutory notice of deficiency, respondent determined that petitioner's claimed deductions for contributions to the pension plan were not allowable because the plan did not meet the requirements of sections 401(a)(3)(A) or 401(a)(3)(B) for the reason that none of the employees met the eligibility requirement of three years of service as of June 30, 1973 and June 30, 1974. Respondent also made other adjustments which are not at issue here. Respondent thus determined that there were due from petitioner deficiencies in income taxes for the taxable years ended June 30, 1973, 1974 and 1975 in the amounts of $ 18,656.43, $ 24,132.21 and $ 1,704.71, respectively. In the petition, petitioner only put in issue the correctness of respondent's disallowance of the deductions for contributions to the pension plan for the taxable years ended June 30, 1973 and June 30, 1974. OPINION The first issue to be decided in this case is whether the pension plan which petitioner adopted satisfied the requirements of qualification set forth in section 401(a) for the taxable years ending June 30, 1973 and June 30, 1974. On May 17, 1972, petitioner *132 adopted a prototype pension plan offered by Confederation by executing a joinder agreement; by this agreement petitioner established a noncontributory, defined benefit plan which was to be funded by insurance pension policies on the lives of the participants. Respondent asserts that petitioner's plan was unqualified specifically because it required an employee to complete three years of continuous employment with petitioner in order to become eligible to participate. Since petitioner did not come into existence until July 1, 1971, none of its employees satisfied the three-year service requirement during the years in issue. Respondent thus contends that the plan was not qualified under the provisions of section 401(a)(3) since the plan did not cover any of petitioner's employees. [2]
*133 Petitioner responds by maintaining that the three-year eligibility requirement was a mistake since petitioner could not have intended to adopt a plan which covered none of its employees; petitioner contends that the revised joinder agreement executed on August 7, 1975, reflects the true intent of petitioner's officers. At trial, Carter and Greenfield testified in an effort to demonstrate that a mistake had been made in filling out the joinder agreement and that petitioner had meant to establish an 11-month requirement. Respondent, in reply, urges that the evidence adduced by petitioner fails to demonstrate that an 11-month service requirement was the provision which was originally intended and that in any event such evidence is inadmissible under the parol evidence rule. We agree with respondent that, as a factual and legal matter, we are not at liberty to find that the joinder agreement provided for any service requirement other than the three-year one set forth in the original plan. The testimony of Carter, petitioner's president and Greenfield, Confederation's agent, is insufficient to satisfy petitioner's burden of proving the specific service requirement which was purportedly *134 intended as the "real" one. Neither witness stated that an 11-month service requirement was originally intended. Carter testified only that the plan was supposed to have participants in the first year of operation. [3] Although Greenfield noted that the three-year service requirement was an error, his testimony as to the proper coverage requirement did not go beyond stating that "the intent of the plan at the inception was to cover all qualified employees." In addition, in view of Greenfield's testimony that petitioner sought to exclude short-term, high turnover employees, it would seem that an 11-month service requirement would be inconsistent with that stated objective. We are reluctant to find that petitioner has sustained its evidentiary burden concerning the plan's intended service requirement and are unwilling to accept parol evidence of such intent in the face of the contrary provisions of the plan, especially *135 in light of Deshotels v. United States, 450 F.2d 961 (5th Cir. 1971). In that case, the taxpayer, an attorney, entered into a contingent fee arrangement with a client pursuant to which the taxpayer eventually received an interest in mineral property. The taxpayer argued that he was entitled to an allowance for depletion, a position which depended upon whether the taxpayer possessed a present interest in the minerals. The parties to the agreement testified that they intended to create a present interest even though the agreement did not bear any indication of establishing one. The Court reversed the District Court's judgment for the taxpayer and held that even though parol evidence was admissible under the law of the State in question, Louisiana (either to explain the written contract or to reform it when the writing did not conform to the true intent of the parties), such evidence was inadmissible in a federal tax case in the absence of additional evidence which would corroborate the testimony of the contracting parties. The court reasoned that if a taxpayer were allowed to prevail upon parol evidence alone there would be a strong incentive for manufactured testimony. *136 Additionally, the court indicated that the burden of proof would essentially shift to the government since the taxpayer's evidentiary burden would be so slight and "the Commissioner would face the insuperable task of demonstrating that the taxpayer did not intend a document to operate as the taxpayer says he did." Deshotels v. United States, supra at 967. [4]
We are thus convinced that petitioner's plan, as originally written, is the appropriate one for determining its initial qualification. Under the plan, since there were no covered employees, neither of the coverage tests contained in section 401(a)(3) as in effect during the years before the Court were satisfied and the plan as originally written was not qualified. Petitioner has additionally argued that the revised joinder agreement should be given retroactive effect under the authority of Aero Rental v. Commissioner, 64 T.C. 331 (1975) *137 (Reviewed by the Court). In that case the taxpayer adopted a stock bonus plan for its employees on December 24, 1969. Six months later, it submitted an application for determination of qualification to the District Director. When the agent found certain provisions of the plan to be objectionable, the taxpayer amended the objectionable provisions to make them acceptable to the agent on July 1, 1971. A favorable determination was then issued, stating that the plan was qualified, but only for taxable years ending after December 31, 1970. The taxpayer asserted that the plan was qualified for 1969 and 1970, as well. We agreed with the taxpayer that under the facts of that case, retroactive effect should be granted to the amendments. Later cases, however, have indicated that our AeroRental holding is not to be expansively construed. See, e.g. Engineered Timber Sales, Inc. v. Commissioner, 74 T.C. 808 (1980); Oakton Distributors, Inc. v. Commissioner, 73 T.C. 182 (1979); Jack R. Mendenhall Corp. v. Commissioner, 68 T.C. 676 (1977). In Mendenhall, supra, we held that to receive retroactive effect *138 under Aero Rental, the taxpayer must show (1) that no circumstances arose which caused the objectionable provisions of the plan to be brought into operation and (2) the employer exercised reasonable diligence in attempting to obtain a favorable determination letter from the Internal Revenue Service. In Mendenhall, a delay of five years and five months from the plan's adoption to the seeking of a determination letter was held not to constitute reasonable diligence (68 T.C. at 682). In the instant case, petitioner executed the joinder agreement in May 1972. It did not seek a determination of qualification until April 1975. We do not believe that this nearly three-year delay constituted reasonable diligence by petitioner. Section 2.03 of the prototype pension plan adopted by petitoner and read by its president (a trustee of the Trust) on May 17, 1972, provided that upon execution of the joinder agreement "the Employer shall cause the Trust to be submitted to the Internal Revenue Service for a determination of its status as a qualified employee pension plan and trust * * *." Section 2.03 further provided for termination of the Trust in the event that the Internal *139 Revenue Service determined that the Trust "does not qualify for the first Trust Year." Clearly, petitioner was on notice that a determination letter should have been promptly sought after it adopted the plan. The plan even appears to contemplate the obtaining of such a determination within the first year of the Trust's operation. Petitioner seeks to be excused from this failure to seek a determination letter within a reasonable time by arguing that it relied in so doing on the statements of Greenfield that no additional action was needed to qualify the plan. Absent the provisions of section 2.03 of the prototype plan, we might have found such reliance to be at least arguably reasonable. However, we think that section 2.03 put petitioner on notice that a determination letter might be necessary and obligated petitioner to inquire further as to the correctness of Greenfield's statements. Certainly, by July 1973, when petitioner learned of Greenfield's embezzlement it no longer had any cause to continue its reliance on his statements in connection with the plan's tax consequences.
Therefore, we find that petitioner is not entitled to any retroactive effect for its amendments to *140 the pension plan under the Aero Rental line of cases. [5] Accordingly, we hold that petitioner's pension plan was not qualified during the years before the Court. Reaching this conclusion, we need not address any of respondent's other arguments. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, except as otherwise specifically indicated.↩
2. Section 401(a)(3) (prior to amendment by P.L. 93-406) provides in relevant part: (a) Requirements for qualification.--A trust created or organized in the United States and forming part of a * * * pension * * * plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section-- (3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either-- (A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or (B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist of supervising the work of other employees, or highly compensated employees.↩
3. Carter also testified that the plan was intended "to take care of my loyal employees;" that it was supposed to cover "whoever needed to be covered in order to have the plan qualify;" and that he intended to benefit "all those that were eligible under the plan."↩
4. Compare Estate of Craft v. Commissioner, 68 T.C. 249, 262-263 (1977), affd. per curiam, 608 F.2d 240↩ (5th Cir. 1979), where this Court looked to the law of the state which governed the contract insofar as the admissibility of parol evidenced was concerned.
5. Respondent has argued that the Aero Rental line of cases has been preempted by the amendment of sec. 401(b) by ERISA. Since we find that petitioner may not avail itself of Aero Rental↩, we express no opinion on this argument.