STARK TRUSS COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stark Truss Co. v. Commissioner
Docket No. 2977-90R
United States Tax Court
T.C. Memo 1991-329; 1991 Tax Ct. Memo LEXIS 378; 62 T.C.M. (CCH) 169; T.C.M. (RIA) 91329; July 17, 1991, Filed *378 Decision will be entered for the respondent. Terrence P. Kessler, for the petitioner. Katherine Lee Wambsqans, for the respondent. RAUM, Judge. RAUM
MEMORANDUM OPINION The Commissioner determined that the employee stock ownership plan (the plan) operated by the Stark Truss Company, Inc. (petitioner) does not meet the requirements of section 401[1] for the plan years 1984 through 1987. The Commissioner also determined that the trust that constitutes a part of the plan is consequently not exempt under section 501(a) for those years. Petitioner has invoked the jurisdiction of this Court under section 7476 to obtain a declaratory judgment as to whether the plan and the trust meet the requirements of sections 401 and 501(a), [2] respectively. The case was submitted on the basis of a stipulated administrative record. The principal issue relates to the timeliness of amendments to petitioner's plan as they affected for 1984-1987 the qualification of the plan that had previously been approved (in 1980), where certain subsequently enacted statutes (in 1982 and 1984) added extensive new provisions that were required to be included in a plan as a condition for qualification. *379 Petitioner is a corporation with its principal place of business at Canton, Ohio. Petitioner and the plan each operate on a calendar year basis. The plan first became effective on January 1, 1978. On April 11, 1980, the Commissioner issued a determination that the plan was a qualified plan under section 401 of the Internal Revenue Code, and that the trust was exempt from tax under section 501(a). In 1982 and 1984, Congress enacted extensive amendments to certain sections of the Code relating to the qualification of stock bonus plans under section 401. See generally subtitle C, title II of the Tax Equity and Fiscal Responsibility *380 Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, enacted September 3, 1982; title V of the Tax Reform Act of 1984 (TRA), Pub. L. 98-369, 98 Stat. 494, enacted July 18, 1984; and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, enacted August 23, 1984. The Commissioner has determined that TEFRA, TRA, and REA required petitioner to amend its plan in order to remain qualified under section 401. TEFRA changed substantially the requirements for a pension plan to be qualified under section 401(a). Such changes included, among many others, a reduction in the limitations on the maximum amounts that could be contributed to both defined benefit and defined contribution plans. Sec. 235 of TEFRA, 96 Stat. 505. TEFRA also contained provisions introducing a new concept labeled "top heavy." These provisions denied qualification under section 401 of the Code where certain employees received too large a share of the benefits, and they also imposed additional requirements for vesting and minimum benefits with respect to top heavy plans -- all set forth in extensive highly specific detail. Sec. 240 of TEFRA, 96 Stat. at 514-520. Further, sec. 242 of TEFRA, 96 Stat. at *381 521, required plans to contain new provisions relating to mandatory distributions to employees generally, with a different requirement in respect of such distributions to a "key employee who is a participant in a top-heavy plan." TRA and REA also changed substantially the requirements for a plan to be qualified under section 401 of the Code. Section 521 of TRA made changes in the distribution requirement previously amended by TEFRA. 98 Stat. at 866-867. Section 524 of TRA also changed the method used to determine whether a plan was top heavy. 98 Stat. 872. REA lowered certain age limits relating to minimum participation in qualified plans, and also lowered certain other age limits relating to the determination of nonforfeitable percentages. See sec. 202(a) and (b) of REA, 98 Stat. 1436-1437. Section 202(c) of REA changed the term "one year break in service" to "five consecutive one year breaks in service," which allowed participants to obtain vested status in plans more easily. 98 Stat. 1437. Section 202(d) of REA changed the circumstances in which years of service prior to a series of breaks in service would be counted for computing a nonvested participant's period of service. *382 98 Stat. 1437. Section 202(e) of REA added new provisions requiring an individual to be credited with certain hours of service for the purpose of avoiding a break in service for purposes of plan participation in the case of certain maternity or paternity absences. 98 Stat. 1438. Finally, section 203 of REA required that a profit sharing plan provide for the payment in full (in the form of an annuity) of a participant's nonforfeitable accrued benefit to the participant's spouse upon the death of that participant. 98 Stat. 1440-1441. In view of the amendments that had to be made to a plan by reason of TEFRA, TRA, and REA, in order to satisfy the numerous additional qualification requirements of section 401, it was obvious that a reasonable period of time was necessary to make the required amendments. And, in recognition of the fact that the various times otherwise allowed by these statutes for such changes in respect of particular provisions might be inadequate, the Commissioner from time to time extended the deadlines. There is no dispute here as to the Commissioner's authority to do so. Cf. sec. 7805(b). As finally extended, the deadline for compliance with respect to the 1984 *383 and 1985 plan years was June 30, 1986, for compliance with the 1986 plan year was December 31, 1986, and for compliance with the 1987 plan year was December 31, 1987. We set forth briefly in the margin the IRS rulings in this respect. [3]
*384 There is no dispute that petitioner did not make any of the required amendments to the plan prior to the expiration of the final deadlines. However, petitioner makes a lame contention that there is no proof that the plan as it existed prior to any amendment failed to satisfy all of the requirements of TEFRA, TRA, and REA. The point is utterly without merit. Apart from the unlikelihood that the plan had been so presciently crafted as to anticipate all of the numerous detailed requirements that were added by TEFRA, TRA, and REA some four to six years after the adoption of the plan in 1978, the burden of proof was upon petitioner to show that the existing plan already satisfied those requirements. See Linwood Cemetery Assn. v. Commissioner, 87 T.C. 1314, 1323 (1986). And there is not a scintilla of any such proof in the record. Moreover, as will appear shortly, when petitioner in fact later made amendments to the plan, all the deadlines had already passed. On May 23, 1988, the IRS received an application from petitioner dated April 14, 1988, for "Determination for Defined Contribution Plan," which had attached to it a supplemental application for approval *385 of employee benefit plans under TEFRA, TRA and REA. Thereafter, in a letter to the IRS dated August 23, 1988, petitioner submitted "proposed amendments" to the plan. And, on February 22, 1989, the IRS sent two letters to petitioner. The first was a favorable determination in respect of petitioner's plan, but was made applicable only "to plan years beginning after December 31, 1987," [4] and was explicitly made "subject to your adoption of the proposed amendments submitted in your or your representative's letter dated August 23, 1988." The second was a proposal to to disqualify the plan for each of the years 1984 through 1987. That letter stated that the plan did "not meet the requirements of section 401(a)," and attachments to the letter made clear that the plan had not been "timely amended for TEFRA, TRA, and REA by the required compliance date(s)." Further, the second letter revoked the favorable determination letter of April 11, 1980, for each of the plan years 1984 through 1987. Thereafter, on March 3, 1989, only some nine days after the two IRS letters of February 22, 1989, petitioner adopted two amendments to the plan (Amendments I and II), each purportedly effective January *386 1, 1984, in an apparent effort to satisfy the conditions stated in the first letter relating at least to prospective qualification of the plan. And, on November 22, 1989, the Commissioner issued the final determination that the plan did not meet the requirements of section 401 for the plan years 1984 through 1987 because "the plan was not timely amended to meet the requirements of" TEFRA, TRA, and REA. Although we are satisfied that the plan was properly amended on March 3, 1989, we consider briefly petitioner's contention that it was amended on April 14, 1988. The record contains a copy of the complete plan dated April 14, 1988, which incorporates Amendment I which was in fact adopted March 3, 1989. And, in the margin of the April 14, 1988 plan adjacent to each change *387 reflected in Amendment I, there were handwritten notations that such provisions were "proposed amdts 8/23/88." Petitioner has relied upon this version of the plan as having in fact been adopted on April 14, 1988. Just how an April 14, 1988 document could refer to amendments proposed on August 23, 1988, baffles us. The explanation, we think, is that the so-called April 14, 1988 version of the plan appearing in the record is spurious, having in fact been put together long after April 14, 1988. Moreover, this so-called April 14, 1988 plan does not even contain the language of the proposed Amendment II. To add further to the confusion, in petitioner's May 23, 1988 application for a determination, the blank reading "Date agreement signed" was filled in with the number "188," suggesting a date in January 1988. In any event, regardless of which of the possible dates may be considered as the date when the qualifying amendments were adopted, the plain fact is that they were adopted after the final deadlines. Petitioner relies upon the so-called April 14, 1988 version of the plan as reflecting the amendments required by TEFRA, TRA, and REA, and treats it as being retroactively effective *388 January 1, 1984. [5] However, it concedes for purposes of this case that the amendments to the plan allegedly adopted on April 14, 1988, were "not timely so as to comply with the requirements of Section 401(b)," which permits certain retroactive changes in a plan. [6] But it contends that section 401(b) is merely a "safe harbor" provision, and that it is not the exclusive means by which remedial retroactive amendments should be given effect. It relies upon Aero Rental v. Commissioner, 64 T.C. 331 (1975). Passing the question whether the so-called April 14, 1988 version of the plan is to be taken seriously as reflecting the necessary amendments adopted allegedly on that day, we reject petitioner's position that it is entitled to the treatment accorded the taxpayer in Aero Rental based on the facts in that case. *389 In Aero Rental, the employer sought a determination in June 1970 that a profit sharing pension plan adopted in December 1969 was qualified. When a revenue agent raised some objections to the plan, Aero quickly amended it to eliminate such objections. But before the plan was approved, a newly assigned second agent raised further objections, and, upon Aero's "appeal" to the national office of the IRS, the agent's position was affirmed on May 10, 1971. Aero then promptly amended the objectionable provisions on July 1, 1971, to make them acceptable. The IRS thereupon determined that the plan was qualified for the years after December 31, 1970, but did not approve the plan for 1969 and 1970. The holding in favor of Aero must be read in the context of the employer's promptness in responding to the objections raised during the administrative consideration of its application for a favorable ruling, and the fact that it initiated its request for the ruling only some six months after the plan was adopted. In explaining its reason, at least in part, for its conclusion that the plan was qualified for 1969 and 1970, the Court stated that the employer "certainly acted with due diligence *390 so far as 1970 was concerned, and although it could have acted more promptly with respect to 1969, its conduct was still within the realm of reason." Aero Rental v. Commissioner, 64 T.C. at 342. Subsequent cases have identified two conditions that must be satisfied by an employer seeking retroactive effect for amendments to its plan. First, no circumstances may have arisen which call into operation the objectionable provisions of the plan. Second, the employer must have exercised "reasonable diligence" in attempting to obtain a favorable determination letter from the Internal Revenue Service. Bolinger v. Commissioner, 77 T.C. 1353, 1360 (1981); Oakton Distributors, Inc. v. Commissioner, 73 T.C. 182, 190 (1979); Jack R. Mendenhall Corp. v. Commissioner, 68 T.C. 676, 681 (1975). We find that petitioner did not use reasonable diligence in attempting to obtain a favorable determination letter from the IRS, and we therefore need not reach the question whether any objectionable provisions contained in the plan came into operation. Petitioner's action or inaction can hardly be described as reflecting "reasonable *391 diligence," particularly when contrasted with the Court's views as to the conduct of the employer in Aero Rental. There, as noted above, the employer applied for a favorable determination approximately six months after its plan became operative and responded promptly to IRS suggestions during the administrative process. While we ultimately approved retroactive effect for the amendments with respect to both 1969 and 1970, we did suggest that the timeliness of the taxpayer's action as it related to 1969 was not free from doubt. Thus, in comparing 1969 with 1970, we stated that "Aero's conduct with respect to 1969 is subject to more criticism -- it did not adopt the plan until the final month of the year and did not seek a ruling until the sixth month of the following year." Aero Rental v. Commissioner, supra at 339. In the present case, petitioner did not apply for a determination for over five and one half years after the enactment of TEFRA, and over three and one half years after the enactment of TRA and REA. If a delay of six months deserves "criticism," Aero Rental v. Commissioner, supra, then a delay of at least three and *392 a half years and as much as five and a half years indicates a lack of anything approaching reasonable diligence. Nor did petitioner submit a valid excuse or justification for its delay in seeking a favorable determination from the Commissioner. [7] We therefore find that petitioner did not use reasonable diligence in obtaining a favorable determination letter from the IRS, and hold that the amendments it made to its plan do not operate retroactively to years beginning prior to December 31, 1987. *393 Petitioner argues that "Stark Truss' previous diligence [in 1980] in obtaining its original determination letter, coupled with its compliance in operation should indicate sufficient diligence to apply Aero Rental and give effect to the retroactive amendments." But the "reasonable diligence" test requires a consideration of the diligence with which petitioner sought the favorable determination for which it now seeks retroactive effect. See Aero Rental v. Commissioner, supra, at 342. It is therefore irrelevant whether petitioner was diligent in applying for its original determination in 1980. Nor is it critical that petitioner's plan may not have operated in violation of the Code, see Tionesta Sand & Gravel, Inc. v. Commissioner, 73 T.C. 758, 764-765 (1980), affd. by unpublished opinion 642 F.2d 444 (3d Cir. 1981). We therefore make no finding as to whether it in fact operated in conformity with the Code. It was necessary that the plan contain provisions that satisfy the requirements of the Code, as amended by TEFRA, TRA, and REA. The fact is that petitioner's conduct as it relates to 1984-1987 was egregiously *394 lacking in "reasonable diligence" in making timely qualifying amendments to the plan as well as in seeking approval from the IRS. It is therefore irrelevant that the possible operation of the plan was in conformity with the various statutory requirements, although such compliance is hardly free from doubt on this record as it relates to all the requirements added by TEFRA, TRA, and REA. We have considered other contentions made by petitioner, and have found them unpersuasive. Decision will be entered for the respondent.
Footnotes
1. Except as otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years at issue. ↩
2. Petitioner does not present any separate arguments with respect to exemption under sec. 501(a), and there is no dispute that exemption of the trust under sec. 501(a) would follow automatically in this case from qualification of the plan under section 401↩.
3. At first, calendar year plans such as petitioner's had to be amended by December 31, 1984, in order for such amendments to have retroactive effect. See I.R.S.Notice 83-4, 1983-1 C.B. 532. The IRS then extended the date for retroactive amendment to comply with the requirements of TEFRA to September 15, 1985. See Notice 85-5, 1985-1 C.B. 427; Notice 85-14, 1985-2 C.B. 407, 408. September 15, 1985, was also the date by which plans had to comply with the top-heavy requirements of secs. 401(a)(10) and 416 as modified by TRA. See Notice 85-5, supra; Notice 85-14, supra. Petitioner's plan was required to comply with all other changes required by TRA, and all changes required by REA, by December 31, 1985. See Notice 85-5, supra; Notice 85-14, supra. In News Release IR-85-89, dated August 30, 1985, the Commissioner again extended the time allowed for remedial amendment by postponing the deadline for compliance with TEFRA, TRA, and REA until November 1, 1985. Announcement 86-60, 1986-19 I.R.B. 17. As noted above in the body of this opinion, the final deadline for compliance with respect to the 1984 and 1985 plan years was June 30, 1986, and the final deadlines for compliance with respect to the 1986 and 1987 plan years were December 31, 1986, and December 31, 1987, respectively. See Notice 86-3, 1986-1 C.B. 388-389. After June 30, 1986, individual plans could no longer be amended to conform with the requirements of TEFRA. However, employers could still obtain retroactive qualified status for their plans by adopting a master or prototype plan. See Notice 86-3, 1986-1 C.B. 388. The opportunity to obtain retroactive qualified status by adopting such plans did not end until January 14, 1988. Notice 87-80, 1987-2 C.B. 388↩. No such master or prototype plan was adopted at any time here, and none is involved in this case.
4. The limited retroactivity of the approval of the plan to the year 1988, conditioned on the amendments adopted on March 3, 1989, is related to the provisions of sec. 401(b) and secs. 1.401(b)-1(b) and (c), Income Tax Regs. See infra↩ note 6.
5. The April 14, 1988 version states that "the provisions of this Plan, as set forth herein, shall apply only to an Employee who terminates employment on or after January 1, 1984, or such other date as set forth herein." We assume without deciding that the quoted language is sufficient, to the extent relevant, to make the plan operative as of January 1, 1984. ↩
6. Section 401(b) is not easily read. It provides: (b) CERTAIN RETROACTIVE CHANGES IN PLAN. -- A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of subsection (a) for the period beginning with the date on which it was put into effect, or for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements, and ending with the time prescribed by law for filing the return of the employer for his taxable year in which such plan or amendment was adopted (including extensions thereof) or such later time as the Secretary may designate, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for all purposes for the whole of such period. The IRS February 22, 1989 approval of the plan for years beginning after December 31, 1987, was conditioned on the adoption of specified amendments. Such one year retroactivity to 1988 was probably based on the fact that petitioner's returns for 1988 were not due until after the favorable ruling of February 22, 1989, and the March 3, 1989 adoption of the amendments. See secs. 1.401(b)-1(b) and (c), 1.6072-2(a), Income Tax Regs.↩
7. In its administrative appeal from the IRS February 22, 1989 letter proposing to disqualify the plan for the years prior to 1988, petitioner attempted to explain its tardy adoption of the plan reflecting the amendments required by the statute. It stated that "The Company changed counsel in 1982. Prior counsel had great experience in the retirement plan area and new counsel had very limited experience with retirement plans." This circumstance, however, can hardly make timely that which was otherwise unacceptably untimely.↩