MILLS, MITCHELL & TURNER, A KENTUCKY PARTNERSHIP, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mills, Mitchell & Turner v. Commissioner
Docket No. 15628-90R
United States Tax Court
T.C. Memo 1993-99; 1993 Tax Ct. Memo LEXIS 100; 65 T.C.M. (CCH) 2127; 16 Employee Benefits Cas. (BNA) 2001; March 23, 1993, Filed *100 For petitioner: Alan N. Shovers and John E. Hegeman. For respondent: Eric B. Jorgensen. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined that the defined benefit pension plan operated by petitioner, Mills, Mitchell & Turner (MMT) does not meet the requirements of section 401[1] for the plan years 1985 through 1987, and that the trust that constitutes a part of the plan is consequently not tax-exempt under section 501(a) for those years. The Commissioner also ruled in a companion determination that the plan did meet those requirements for the years beginning after December 31, 1987. The earlier years alone are involved herein. Petitioner has invoked the jurisdiction of this Court under section 7476 to obtain a declaratory judgment as to whether the plan and the trust meet the requirements of sections 401 and 501(a), [2] respectively, for the years 1985-1987. *101 The case has been submitted on the basis of a stipulated administrative record. The issues relate to the timeliness of amendments made to petitioner's plan as they affected 1985 through 1987 in order to bring the plan into compliance with the requirements for tax-qualified status contained in section 401(a), as amended by the Tax Reform Act of 1984 (TRA), Pub. L. 98-369, 98 Stat. 494, enacted July 18, 1984, and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, enacted August 23, 1984. [3]
*102 Petitioner is a law partnership; its principal place of business was in Madisonville, Kentucky, at the time it filed the petition herein. In 1984, petitioner formed the Mills, Mitchell & Turner pension plan and trust, a defined benefit pension plan. The plan was adopted by petitioner on June 29, 1984, effective as of January 1, 1984. On August 30, 1984, Trustee Maubert R. Mills filed a Form 5300, Application for Determination for Defined Benefit Plan, for the MMT plan and trust. On February 28, 1985, the Commissioner issued a favorable determination letter (First Determination Letter) for the plan. However, the determination was made subject to petitioner's adoption of a proposed amendment previously submitted by petitioner to the Commissioner in a letter dated January 17, 1985. On or about January 25, 1985, petitioner adopted that proposed amendment (First Amendment). The Commissioner's determination letter also explicitly reserved determination as to whether the plan met the requirements of REA and TRA. During the plan years ended December 31, 1985, 1986, and 1987, petitioner's plan consultant was Gogerty & Company, Inc. (Gogerty), located in Indianapolis, Indiana. In *103 December of 1987, petitioner engaged a new plan consulting firm, Lexington Plan Administrators, Inc. (Lexington), located in Gold River, California. Lexington suggested amendments to petitioner's plan which were subsequently adopted on January 19, 1988. The plan as thus amended was dated January 19, 1988, and was signed by the three name partners as trustees and by one of them on behalf of petitioner as employer. It was sent to the IRS by Lexington for petitioner by letter dated January 27, 1988, requesting a determination as to whether the amended plan thus submitted met the requirements of section 401(a) as modified by TRA and REA. Although we have not made an exhaustive study of that amended plan, it does appear to have addressed the qualification requirements of TRA and REA. [4]
*104 The Commissioner thereafter on December 1, 1988, issued to petitioner a favorable determination letter (Second Determination Letter) with regard to the plan submitted on January 27, 1988, but it was limited to plan years beginning after December 31, 1987. However, on December 1, 1988, the Commissioner also advised petitioner by letter that the IRS proposed to revoke the favorable determination letter dated February 28, 1985, i.e., the First Determination Letter, and to disqualify the plan as not meeting the requirements under section 401(a) for the plan years ending December 31, 1985, 1986, and 1987, thus causing the trust to lose its tax exempt status for the trust years ending with or within the affected plan years. On April 11, 1990, the Commissioner issued the final revocation letter for the years 1985 through 1987, revoking the favorable determination letter of February 28, 1985, because the "plan was not timely amended to comply with * * * [TRA] and * * * [REA]." As indicated supra note 4, we sustain the Commissioner. The Commissioner's determination as to the years 1985-1987 was based upon petitioner's failure to amend its plan prior to the expiration of the deadlines *105 fixed by Notice 85-5, 1985-1 C.B. 427, and Notice 86-3, 1986-1 C.B. 388, as revised by Announcement 86-60, 1986-19 I.R.B. 17. The Commissioner advised petitioner that such deadlines were as follows: The compliance date for the plan year ended December 31, 1985, was June 30, 1986; the compliance date for the plan year ended December 31, 1986, was December 31, 1986; and the compliance date for the plan year ended December 31, 1987, was December 31, 1987. Since petitioner did not in fact adopt the amendments required to bring the plan into compliance with section 401(a), as revised by TRA and REA, until January 19, 1988, the Commissioner determined that the plan was not timely amended for these three years. Petitioner has not challenged the validity of the IRS rulings which established the deadlines. The issues before us are: (1) Whether the Commissioner is barred by law from retroactively revoking the tax-qualified status of petitioner's pension plan under section 401(a) for the years 1985-1987; and (2) if the Commissioner is not so barred, whether he should nonetheless be equitably estopped from retroactively *106 revoking the plan's qualified status for each of those tax years. On each of these issues, we find in favor of the Commissioner. 1. Whether the retroactive revocation was erroneous under the statute, regulations, or other legal principles. TRA and REA both substantially changed the requirements for qualification under section 401(a). Section 521 of TRA changed requirements relating to plan distributions made to beneficiaries of deceased participants: 98 Stat. 865-868. Section 524 of TRA altered the method of determining whether a plan was "top heavy". 98 Stat. 872. [5]
*107 REA also made numerous changes to the requirements for tax qualification. Several of those changes were set forth in section 202 of REA, which lowered certain age limits relating to minimum participation in qualified plans, lowered certain other age limits relating to the determination of nonforfeitable percentages, and made various changes relating to "breaks in service". 98 Stat. 1436-1440. TRA and REA were effective, at least to the extent relevant here, for tax years beginning after December 31, 1984. TRA, secs. 521-529, 98 Stat. 865-877; REA, sec. 302(a), 98 Stat. 1451. However, because each of those Acts required extensive amendments to existing plans, the IRS has at various times extended the deadlines for making the required amendments. Notice 85-5, 1985-1 C.B. 427, provided that in order for plans to comply with TRA and REA, they had to be amended by the last day of the first plan year that began on or after January 1, 1985. The IRS has in addition from time-to-time granted further extensions of the deadline for making amendments to comply with TRA and REA. [6] And as finally extended, the deadlines for compliance with respect to the 1985, *108 1986, and 1987 plan years were June 30, 1986, December 31, 1986, and December 31, 1987, respectively. Notice 86-3, 1986-1 C.B. 388; Announcement 86-60, 1986-19 I.R.B. 17. Since petitioner did not amend its plan to comply with the TRA and REA requirements until at least January 19, 1988, it missed each of the deadlines noted above. Petitioner's plan must, therefore, obviously be disqualified for each of those plan years. Nevertheless, petitioner contends in substance that the changes were retroactively effective to meet the deadlines, relying upon certain relief provisions in the statute, regulations, judicial decisions, and administrative practice. a. Retroactive relief under section 401(b) of the Code and section 1.401(b)-1, *109 Income Tax Regs. First, in its petition to the Court, petitioner cites section 401(b) as authority supporting its position that plan amendments made on January 19, 1988, retroactively qualified the plan for the plan years 1985 through 1987. [7] The text of section 401(b) is highly confusing. [8] However, the regulations issued under section 401(b) undertake to explain the operation of the statute. Sec. 1.401(b)-1(a), Income Tax Regs., provides in pertinent part as follows: Under section 401(b) a * * * pension * * * plan which does not satisfy the requirements of section 401(a) on any day solely as a result of a disqualifying provision * * * shall be considered to have satisfied such requirements on such date if, on or before the last day of the remedial amendment period * * *, all provisions of the plan which are necessary to satisfy all requirements of sections 401(a) * * * are in effect and have been made effective for all purposes for the whole of such period. * * * [Emphasis supplied.]
Thus, a condition for the retroactive relief provided by section 401(b) of the Code is that the failure to meet the requirements of section 401(a) must be solely the result *110 of a "disqualifying provision", and the term "disqualifying provision" is defined in section 1.401(b)-1(b)(1) and (2), Income Tax Regs., as set forth in the margin. [9] Section 1.401(b)-1(b)(1) of the regulations is concerned with provisions relating to new plans and amendments to existing plans that otherwise disqualify the plan under the requirements of section 401(a) of the Code that were applicable to the plan as of the date the plan first became effective. No such provisions or amendments are present in this case. Section 1.401(b)-1(b)(2) of the regulations is concerned with a "plan provision which results in the failure of the plan to satisfy the qualification requirements of the Code by reason of a change in such requirements effected by the Employee Retirement Income Security Act of 1974 * * * [ERISA] or by * * * 'TEFRA'". But petitioner's failure to satisfy the requirements of section 401(a) of the Code is due to changes required by TRA and REA, neither of which is included in the definition of "disqualifying provision", for which retroactive relief is authorized. Plainly, petitioner's failure to meet the demands of TRA and REA is not covered by the retroactive relief *111 provisions of section 401(b) of the Code as explained in the regulations. *112 To be sure, section 1.401(b)-1(b)(2) of the regulations was amended August 5, 1988, T.D. 8217, 1988-2 C.B. 67, 71-72, after the tax years involved herein. Although this amendment was stated to be "generally effective for plan years which begin after December 31, 1979", petitioner would not be entitled to relief even under the amendment. (Emphasis supplied.) In defining the meaning of "disqualifying provision", the amendment enlarged the category of statutory enactments that might result in failure to satisfy the qualification requirements of the Code, and thus form the basis for relief. But none of the additional statutory enactments specified in the amendment are applicable or operative here, since none of them involve TRA or REA. [10]
*113 b. Judicial decision. As petitioner correctly points out, section 401(b) is not the exclusive means by which plan amendments are given retroactive effect for purposes of determining whether the plan qualifies under section 401(a). This Court has previously held that section 401(b) "was intended merely as a 'safe harbor' provision"; and that where a taxpayer initiated a request for an IRS determination within 6 months after the plan was adopted, and thereafter amended the plan within approximately 2 months after it was informed of the Service's objection to certain provisions, the amendments were to be given retroactive effect for the years in dispute. Aero Rental v. Commissioner, 64 T.C. 331, 339, 341-342 (1975). Subsequent cases have, however, made clear that "our Aero Rental holding is not to be expansively construed", D.J. Powers Co. v. Commissioner, T.C. Memo. 1981-622, 42 T.C.M. (CCH) 1524, 1533 (1981), 50 P-H T.C. Memo. par. 81,622, and that two requirements must be met in order for plan amendments to be given retroactive effect in accordance with Aero Rental. First, *114 no circumstances must have arisen which call into operation the objectionable provisions of the plan. Second, the employer must have exercised "reasonable diligence" in attempting to obtain a favorable determination letter from the IRS. Bolinger v. Commissioner, 77 T.C. 1353, 1360 (1981); Oakton Distributors, Inc. v. Commissioner, 73 T.C. 182, 190 (1979); Jack R. Mendenhall Corp. v. Commissioner, 68 9.C. 676, 681 (1977). Petitioner did not apply for its second determination letter, i.e., the determination letter pertaining to the plan amendments required by TRA and REA, until approximately three and one-half years after the enactment of TRA and REA. We have recently held that a delay of such length in attempting to conform the plan to the TRA and REA requirements "indicates a lack of anything [even] approaching reasonable diligence." Stark Truss Co. v. Commissioner, T.C. Memo. 1991-329, 62 T.C.M. (CCH) 169, 173 (1991), 60 RIA T.C. Memo. par. 91,329. See also Kollipara Rejsheker, M.D., Inc. v. Commissioner, T.C. Memo. 1992-628 ("nearly *115 4 years" from plan adoption to submission of an application for determination of exemption in sufficient detail to enable the IRS to consider it). Indeed, we have stated in other cases involving different plan requirements that delays of even shorter duration fall short of the reasonable diligence requirement. See D.J. Powers Co. v. Commissioner, supra, (3-year interval between plan adoption and request for determination letter did not constitute reasonable diligence); Dr. Erol Bastug, Inc. v. Commissioner, T.C. Memo. 1989-262 (dictum) (interval of approximately two and one-half years between adoption of the plan and request for determination letter was not reasonable diligence). Indeed, in Aero Rental v. Commissioner, 64 T.C. at 339, 342, it was stated that the 6-month period there involved was "subject to criticism", although it passed muster as "still within the realm of reason." We hold that petitioner did not use reasonable diligence in attempting to obtain a favorable determination letter from the IRS, and that the plan amendments which petitioner *116 made in 1988 may not be treated as retroactively qualifying the plan for the plan years ending December 31, 1985, 1986, and 1987. c. Retroactive relief at the administrative level-EPCAPP. Petitioner next argues that it is entitled to relief under the IRS Employee Plans Closing Agreements Pilot Program (EPCAPP). [11] In accordance with that program, "key district offices" were given "the discretion to enter into closing agreements as an alternative to plan disqualification" primarily in certain areas, including failure to amend a plan timely to comply with TRA and REA. [12] (Emphasis supplied.) And it was made clear that equities would play a role in determining the key district office's position. [13]
Petitioner's *117 position in respect of EPCAPP is fatally flawed for a number of reasons. We mention only several of them. EPCAPP was merely a "pilot program", and was limited to certain "key district offices". We have no way of knowing whether any of those districts included petitioner. Moreover, EPCAPP was a completely discretionary program. Not only is entering into a closing agreement by its very nature entirely within the discretion of the parties, but the pilot program itself was based upon the discretionary application of certain guidelines by the key district offices. Moreover, it is "well settled that a court may not order an agency to perform a discretionary act." Capitol Federal Savings & Loan v. Commissioner, 96 T.C. 204, 212 (1991). See also Buzzetta Construction Corp. v. Commissioner, 92 T.C. 641, 648 (1989); Oakton Distributors, Inc. v. Commissioner, 73 T.C. 182, 188 (1979); Perlmutter v. Commissioner, 44 T.C. 382, 398 (1965), affd. 373 F.2d 45 (10th Cir. 1967). Finally, aside from the fact that EPCAPP relief is a matter within *118 the Commissioner's discretion, EPCAPP was simply not available as an alternative to disqualification at the time that petitioner's plan was disqualified. The program was established after the qualified status of petitioner's plan had been revoked by both the IRS District Director and the Appeals Office, and indeed even after petitioner filed its petition with this Court. [14] It is, therefore, difficult to understand how the key district office could have been expected to apply EPCAPP to petitioner's plan when that program did not even exist at the time the plan was reviewed by the IRS. *119 2. Whether the Commissioner should be equitably estopped from retroactively disqualifying petitioner's plan. Petitioner argues that even if the Commissioner is not barred by law from retroactively disqualifying the plan for each of the years at issue, the Commissioner should nonetheless be equitably estopped from retroactively applying the sanction of disqualification. Petitioner cites no authority in support of this contention; it merely lists a number of sympathetic circumstances, none of which find support in the administrative record. [15] Moreover, even if such circumstances were documented in the administrative record (or were otherwise agreed to by the parties), they would still not provide sufficient grounds for invoking equitable estoppel principles. Cf. Hamlin Development Co. v. Commissioner, T.C. Memo. 1993-89. *120 It has been held that each of the following requirements must be met for equitable estoppel: (1) There must be a false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in an opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the "true" facts and must reasonably rely on the false statement; and (4) that such person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed. Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971); Kronish v. Commissioner, 90 T.C. 684, 695-697 (1988); Century Data Systems, Inc. v. Commissioner, 86 T.C. 157, 165 (1986). Petitioner has not alleged, and certainly has not established, the requisite false representation or wrongful misleading silence on the part of the Commissioner. Nor for that matter have any of the other requirements listed above been proven or even asserted. We have time and again stated that equitable estoppel is to be applied against the Commissioner only with "the utmost caution and restraint." Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), *121 affd. 810 F.2d 209 (D.C. Cir. 1987); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977); Mortenson Roofing Co. v. Commissioner, T.C. Memo. 1992-112, 63 T.C.M. (CCH) 2186, 2188, 93 RIA T.C. Memo. par. 92,112; see also Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962); Guenzel's Estate v. Commissioner, 258 F.2d 248, 253 (8th Cir. 1958). Under the circumstances of this case, equitable estoppel principles are clearly not applicable here. We have found each of petitioner's arguments against the Commissioner's retroactive disqualification of its plan for the plan years 1985 through 1987 to be unpersuasive. Decision will be entered for respondent. Footnotes
1. Except as otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years at issue.↩
2. Petitioner does not present any separate argument with respect to sec. 501(a), and there is no dispute that exemption of the trust under sec. 501(a) would follow automatically in this case from qualification of the plan under sec. 401↩.
3. TRA was the first of two divisions of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, enacted July 18, 1984. TRA made various amendments to the Internal Revenue Code of 1954. The other division of DEFRA, the Spending Reduction Act of 1984, is not relevant to this case. The parties in their briefs and in various documents in the administrative record have referred to DEFRA and TRA interchangeably, even though the amendments to sec. 401(a)↩ that are the subject of this controversy were more specifically part of TRA.
4. The waters have been muddied by MMT's subsequent submission of another plan in July 1988 signed at that time, purporting to be the only executed plan meeting the requirements of TRA and REA. The plan thus submitted was in response to the Commissioner's request in an undated letter to petitioner for information as to whether the plan was timely amended so as to satisfy the requirements of TRA and REA. That submission was made in an enclosure accompanying a letter of July 19, 1988, signed on behalf of MMT by one of its partners. The letter stated that MMT had relied on Gogerty, its former plan administrator, to provide it with any amendments necessary to keep the plan in compliance, and that Gogerty "must have failed to properly perform its duties if the plan was allowed to fall out of technical compliance." The letter further stated that petitioner "searched * * * [its] records" and asked its former plan administrator [Gogerty] to "search the records", that petitioner has been "unable to locate a signed and dated document amending the previous plan", that the "previous administrator has provided us with a document which was neither signed nor dated", and that "I have signed this and enclose it herewith." The enclosed plan was captioned "Second Amendment↩" and was not dated. Why the IRS made this request of petitioner is somewhat of a mystery since it already had the amended plan submitted by Lexington in January 1988. Perhaps it was aware of the Lexington plan, which it regarded as untimely, and was inquiring merely to learn whether there was some other amendment which had been adopted prior to the Lexington plan that was qualifying and timely as to all years. Farther adding to the confusion is the implied suggestion in petitioner's letter of July 19, 1988, that there had not been any prior signed qualifying amendment to its plan to meet the TRA and REA requirements, apparently ignoring the Lexington plan, and that it was submitting such an amendment for the first time. The writer of that letter would seem to have been wholly unaware of the signed amended plan submitted by Lexington with its letter of January 27, 1988. Although that amended plan turned out to be timely for the years beginning after December 31, 1987, it was untimely as to the years 1985 through 1987, as we hold hereinafter.
5. The top-heavy concept was introduced as part of a series of provisions contained in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, enacted September 3, 1982. These provisions denied qualification under sec. 401↩ where certain employees received too large a share of the benefits, and they also imposed additional requirements for vesting and minimum benefits with respect to top-heavy plans. Sec. 240 of TEFRA, 96 Stat. at 514-520.
6. The chronology of the various deadline extensions announced by the IRS is set forth in our opinion in Stark Truss Co. v. Commissioner, T.C. Memo. 1991-329 n.3, discussed infra↩.
7. Although sec. 401(b)↩ is relied upon in the petition, the point is not developed on brief.
8. Sec. 401(b) reads as follows: (b) CERTAIN RETROACTIVE CHANGES IN PLAN. -- A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of subsection (a) for the period beginning with the date on which it was put into effect, or for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements, and ending with the time prescribed by law for filing the return of the employer for his taxable year in which such plan or amendment was adopted (including extensions thereof) or such later time as the Secretary may designate, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for all purposes for the whole of such period.↩
9. Sec. 1.401(b)-1(b): Disqualifying provisions. For purposes of this section, with respect to a plan described in paragraph (a) of this section, the term "disqualifying provision" means: (1) A provision of a new plan, the absence of a provision from a new plan, or an amendment to an existing plan, which causes such plan to fail to satisfy the requirements of the Code applicable to qualification of such plan as of the date such plan or amendment is first made effective, or (2) A plan provision which results in the failure of the plan to satisfy the qualification requirements of the Code by reason of a change in such requirements effected by the Employee Retirement Income Security Act of 1974 (Pub. L. 93-406, 88 Stat. 829), hereafter referred to as "ERISA", or by the Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. 97-248, 96 Stat. 324), hereafter referred to as "TEFRA↩". For purposes of this subparagraph, a disqualifying provision includes the absence from a plan of a provision required by such change if the plan was in effect on the date such change became effective with respect to such plan. [Emphasis supplied.]
10. Thus, the amendment adds to the list of statutory enactments the Tax Reform Act of 1986 (to be sharply distinguished from TRA, the Tax Reform Act of 1984) and the Omnibus Budget Reconciliation Acts of 1986 and 1987, but significantly does not refer to TRA or REA. And the amendment also adds another type of "disqualifying provision" to cover changes in the law "effected by amendments to the Code that are designated by the Commissioner, at his discretion." However, as noted in Kollipara Rajsheker, M.D., Inc. v. Commissioner, T.C. Memo. 1992-628↩, the Commissioner has not designated TRA or REA as statutory enactments within this category.
11. EPCAPP is explained in an interview of IRS representatives, a copy of the transcript of which is included in petitioner's opening brief as "attachment 4".↩
12. See page 2 of "attachment 4" referred to supra↩ note 11.
13. See page 4 of "attachment 4" referred to supra↩ note 11.
14. Petitioner's opening brief indicates that EPCAPP was first implemented by the IRS in December of 1990. See petitioner's opening brief, p. 13. As indicated earlier, the IRS Appeals Office issued a final revocation letter on April 11, 1990, determining that petitioner's pension did not meet the requirements of sec. 401(a)↩ for the plan years ended December 31 of 1985, 1986, and 1987; and petitioner filed its amended petition with this Court on September 10, 1990.
15. Petitioner contends, inter alia, that the plan had no operational defects and that none of the participants were, therefore, disadvantaged by the late amendment; that when MMT changed plan administrators, the defects were immediately discovered and corrected; that it relied on the presumed expertise of the former plan administrator (Gogerty) who gave repeated assurances that the plan was doing everything necessary to remain in compliance with sec. 401(a)↩; that the former plan administrator shielded itself from legal liability by not listing himself as a named fiduciary; and that the former plan administrator is judgment proof in any event, because he is uninsured. See petitioner's reply brief, pp. 3-4.